IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ZACHARY PENOR,

No. CV 08-1114-HU

Plaintiff,

OPINION AND ORDER

v.

COLUMBIA COUNTY et al.,

Defendant.

MOSMAN, J.,

Defendants Columbia County, Walt Pesterfield, and Pat Mimnaugh filed a Motion in Limine (#23) seeking to exclude the testimony of plaintiff Zachary Penor's expert on the reasonableness of the police force used by the defendants. Defendants argue that Mr. Penor's expert witness, Robert Olsen, is not qualified to testify as an expert and his testimony would not assist the finder of fact. For the reasons set forth below, I GRANT the motion.

## BACKGROUND

At the time of the incident, Mr. Penor was on probation under the supervision of the Columbia County Department of Corrections. (Compl. (#1) ¶ 4.) Mr. Penor claims that on or about September 27, 2006, Mr. Mimnaugh, a probation officer, sexually harassed him during a urinalysis procedure. (*Id.*) On or about September 28, 2006, Mr. Penor reported the harassment to the probation office. (*Id.*) While at the office, Mr. Penor was approached by Mr. Pesterfield, the

PAGE 1 - OPINION AND ORDER

probation director. (*Id.*) Defendants assert that Mr. Pesterfield asked Mr. Penor to wait one moment so that Mr. Pesterfield and another officer could do a "pat-down" search in accordance with the conditions of Mr. Penor's probation. (Def.'s Mem. in Supp. (#25) 2.) Defendants claim that Mr. Penor acted in an aggressive manner and that he refused to proceed with the pat-down. (*Id.*) Mr. Penor disputes this and claims that Mr. Pesterfield grabbed him without any justification, held him, and threw him to the ground. (Compl. (#1) ¶ 4.) Mr. Penor alleges he suffered a broken right arm, cracked ribs, and other injuries. (*Id.*) Following the altercation, the defendants moved to revoke Mr. Penor's probation. (*Id.* at ¶ 5.) Mr. Penor claims that the defendants violated his Fourth Amendment rights by using excessive force and wrongfully incarcerating him after the incident. (*Id.* at ¶¶ 9-10.) To support his claim, Mr. Penor seeks to call Robert Olsen as an expert on the reasonableness of police force. (Pl.'s Resp. (#27) 2.)

Mr. Olsen began his career in law enforcement as a criminal investigator in the Navy from 1974-1979. (Warren Decl. (#24) Ex. 3 at 6.) Following his time in the Navy, Mr. Olsen joined the Coast Guard on active duty for four years, and then joined the Coast Guard reserves in 1983. (*Id.*) Mr. Olsen worked for the Mountain View Police Department in California from 1986-1987, and from 1989-1991, and he served as a field training officer at some point during his final two years as a police officer in Mountain View.[1] (*Id.* at 5, 9-10.) Between 1987 and 1989, Mr. Olsen worked for the Drug Enforcement Agency. (*Id.* at 5.) After Mr. Olsen left the Mountain View Police Department in 1991, he became a firefighter and has not returned to civilian law enforcement. (*Id.* at 7.) Mr. Olsen is currently employed as a firefighter and attorney.

---

[1]  The evidence in the record does not provide detail as to when Mr. Olsen became a field training officer or how long he served in that position.

PAGE 2 - OPINION AND ORDER

(*Id.*)

Throughout his military and law enforcement career, Mr. Olsen was trained in use-of-force techniques, including a training at the FBI Academy in 1987. (*Id.* at 9-10.) More recently, Mr. Olsen taught criminal justice classes at the University of Phoenix and ITT Technical Institute and completed the recertification procedures for California police officers. (*Id.*; *see also* Olsen Decl. (#28) 2) In the last two-and-a-half years, Mr. Olsen has offered himself as an expert three or four times, but has never testified in court as an expert. (Warren Decl. (#24) Ex. 3 at 8.)

## DISCUSSION

The court has a gatekeeping obligation for expert testimony, whether it be scientific or non-scientific. *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). An expert witness may be qualified by his knowledge, experience, or training. Fed. R. Evid. 702. The Federal Rules of Evidence are concerned with both the reliability and helpfulness of an expert's testimony, leaving courts with the discretion to exclude testimony that does not achieve either of these ends. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007). The party offering expert testimony must show, by a preponderance of the evidence, that the testimony is admissible. *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004).

Although not binding on this Court, courts in the Sixth Circuit have discussed the standards to be used when evaluating experts on police practices, including those involving use-of-force issues. *Lee v. Metro. Gov't of Nashville and Davidson County*, 596 F. Supp. 2d 1101, 1120 (M.D. Tenn. 2009); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 907-08 (6th Cir. 2004). In *Champion*, the Sixth Circuit stated that an expert testifying on a discrete area of police practices should have some kind of specialized knowledge related to that specific area.

380 F.3d at 907-08. Testimony on a discrete area of police practices is more likely to be admissible when it is supported by an expert's substantial experiential or educational credentials. *See Lee*, 596. F. Supp. 2d at 1119 (noting that plaintiff's expert, who had been a sheriff for thirty years and a taser instructor for several of those years was uniquely qualified to testify regarding whether a taser should have been used); *see also Champion*, 380 F.3d at 908 (permitting the testimony of an expert employed by the University of South Carolina's Department of Criminology who worked with police agencies to create use-of-force policies, trained officers in the use-of-force, and authored dozens of articles on the subject).

When determining the admissibility of an expert, a court may look at how recently an expert gained his specialized knowledge. *See Rosado v. Deters*, 5 F.3d 119, 124 (5th Cir. 1993). An expert may be properly excluded if his experience or education in the field is outdated. *See Richmond Steel, Inc. v. Puerto Rico Am. Ins. Co.*, 954 F.2d 19, 22 (1st Cir. 1992) (no error in excluding a Certified Public Accountant as an expert witness because it had been ten years since he had dealt with a project similar to the one at issue); *see also Rosado*, 5 F.3d at 124 (affirming district court decision to exclude an accident reconstructionist who was last qualified around twenty-five years before the trial). But, it is not necessary for the expert to be currently employed in his field if he engages in other activities that allow him to have current experiences. *See Lee*, 596 F. Supp. 2d at 1121-22 (allowing testimony of an expert who had not worked for a police force for the previous sixteen years, but who had spent those years testifying as an expert witness on police practices).

If a witness is offered as an expert, the court must ensure that he used reliable methods to reach his conclusions. *Id.* at 1119. Testimony based on an expert's specialized knowledge does

not include unsupported speculation or an expert's subjective beliefs. *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829-32 (9th Cir. 2001) (affirming district court decision to exclude expert testimony because it was not based on enough factual evidence to be found reliable). If an expert bases his testimony on experiential knowledge, he must explain how that experience lead to his conclusions and how he applied his experience to the facts in a reliable way. *Lee*, 596 F. Supp. 2d. at 1119.

## I.    <u>Qualifications as an Expert</u>

I find that the majority of Mr. Olsen's qualifications are outdated and that his recent educational activities in the field are insufficient to qualify him as an expert on the reasonableness of police force.

### A.    *Experience*

Too much time has passed since Mr. Olsen's employment in law enforcement to provide him with the level of specialized knowledge required of an expert witness. Only a subset of Mr. Olsen's overall law enforcement experience is directly related to police force and arrest procedures. There are significant differences between civilian law enforcement and military law enforcement, making Mr. Olsen's experiences in the Navy and Coast Guard less relevant to the reasonableness of the force used by the defendants in a probation setting. Mr. Olsen's most relevant work experience comes from his approximately five years at the Mountain View Police Department in the late 1980's and early 1990's. Although this type of experience is valuable, a significant length of time (nearly twenty years) has passed since Mr. Olsen was last employed as a police officer. I acknowledge that it is not necessary for Mr. Olsen to be currently employed as a police officer, but his current occupations are removed from law enforcement all together. I

PAGE 5 - OPINION AND ORDER

find too much time has passed since Mr. Olsen was a police officer to allow him to testify based on his past employment in law enforcement. *See Richmond Steel*, 954 F.2d at 22 (finding no error in exclusion of an expert partially due to the age of the expert's experience in a particular area).

**B.    *Education***

Mr. Olsen's education alone does not provide him with the specialized knowledge required of an expert. The majority of Mr. Olsen's education was completed twenty years ago when he was still employed in the field. Mr. Olsen was recently recertified in California as a police officer and currently teaches criminal justice courses, but Mr. Olsen's recent educational activities are not substantial enough to provide him with the requisite level of specialized knowledge. There is no evidence in the record describing how much time Mr. Olsen actually spent on police force in his recertification classes[2] or the classes he taught.[3] Mr. Olsen's current educational credentials do not rise near the level of those of the expert in *Champion* whose occupation was the study of criminology and who taught classes specifically on police force. *See* 380 F.3d at 908-09.

The period of time that has gone by since Mr. Olsen completed the bulk of his police work and training is substantial and raises serious concerns. Due to the twenty-year period that has elapsed since most of Mr. Olsen's experience and education, I find that the majority of his

---

[2]  Mr. Penor has not provided evidence of how much time was actually spent in Mr. Olsen's requalification class on any subject. (*See* Olsen Decl. (#28) 2.)

[3]  Mr. Olsen testified that, during the mid-nineties, he taught courses on patrol techniques and general law enforcement at Portland Community College. (Warren Decl. (#24) Ex. 3 at 10.) Mr. Olsen has taught classes on topics such as advanced law, labor law, and search and seizure for the University of Phoenix as recently as 2008. (*Id.* at 10-11.) Mr. Olsen further testified that he taught at ITT Technical Institute, but did not provide detail as to the subject matter of those courses. (*Id.* at 10-11.)

credentials are too old to provide a proper basis for expert testimony. Mr. Olsen's more recent

credentials are insufficient on their own to qualify him as an expert on the reasonableness of

police force.

## II.    Reliability

The Court cannot determine that Mr. Olsen's conclusions are reliable because there is

insufficient information in the record regarding the methodology used by Mr. Olsen in reaching

his conclusions.

### A.    *Materials Reviewed*

Mr. Olsen's deposition testimony reveals large gaps in the information he reviewed when

making his report. For example, Mr. Olsen only reviewed one video (without audio) of the

incident at the probation office and was unaware that a second video existed. (Warren Decl.

(#24) Ex. 3 at 11-12.) Mr. Olsen reviewed interviews of Mr. Pesterfield and Mr. Mimnaugh, but

never reviewed their deposition transcripts. (*Id.* at 11.) Further, Mr. Olsen was aware of an

Oregon State Police Investigation into the incident, but never reviewed the results of the

investigation and only reviewed one page of a four-page Assault Report prepared by an Oregon

State Police detective. (*See id.* at 12.) More generally, Mr. Olsen acknowledged that he has no

understanding of the conditions of Mr. Penor's probation or his underlying conviction. (*Id.* at 13.)

Specifically, Mr. Olsen had no information regarding Mr. Penor's drug use or how that could be

related to the conditions of his probation.[4] (*Id.*) Given that Mr. Olsen has so little information

---

[4]  Mr. Olsen opined that, even if he had known that Mr. Penor tested positive for
marijuana (likely in violation of the conditions of his probation) it wouldn't change his opinion
because "[m]arijuana is a low-level drug as far as use goes and its effect on people. You bump
into people who use marijuana all the time, and it is not one of those drugs that tends to lead to
violence." (Warren Decl. (#24) Ex. 3 at 25.)

about Mr. Penor's background, it is unclear how Mr. Olsen can reach conclusions regarding whether certain actions were reasonable in light of all the information known by the defendants about Mr. Penor.

Mr. Olsen also places undue reliance on the allegations contained in Mr. Penor's Complaint. Mr. Olsen's report discusses Mr. Penor's injuries without having ever reviewed a medical report. (*Id.* at 12.) Instead, Mr. Olsen's discussion of Mr. Penor's injuries is entirely based on the factual allegations in Mr. Penor's Complaint, which Mr. Olsen assumes to be true. (*Id.*) Mr. Olsen's deposition testimony suggests that he took the allegations in Mr. Penor's Complaint as truth throughout the entire analysis. (*Id.*) This is particularly problematic in light of the fact that Mr. Olsen bases much of his opinion on the alleged injuries in the Complaint, including his conclusion that defendants must have used excessive force because Mr. Penor "received remarkable injuries, which . . . do not occur in the absence of excessive force and/or negligence." (*See* Olsen Decl. (#28) Ex. A at 4-5.) The large gaps in Mr. Olsen's knowledge and his reliance on Mr. Penor's Complaint for critical facts raise questions regarding the reliability of Mr. Olsen's conclusions.

### B.    *Methodology*

The only evidence of Mr. Olsen's methodology is a list of materials he reviewed prior to completing his expert report. (*See* Warren Decl. (#24) Ex. 3 at 11.) The evidence in the record suggests that Mr. Olsen's conclusions are based on his personal opinion and lack a supporting methodology. For example, Mr. Olsen's report states that "[b]y viewing the CD it is clear that this contact was doomed to become a physical fight." (*See* Olsen Decl. (#28) Ex. A at 2.) When asked about this assertion during his deposition, Mr. Olsen did not respond with any evidence of the

PAGE 8 - OPINION AND ORDER

processes or methodology used in coming to such a conclusion. (Warren Decl. (#24) Ex. 2 at 14.) When Mr. Pesterfield put his hand on Mr. Penor's elbow in the probation office, Mr. Penor pulled his arm away. (*Id.* at 15.) Mr. Olsen stated that this action "wasn't aggressive. It was actually withdrawing." (*Id.*) Later in his testimony, Mr. Olsen characterized Mr. Penor's act of pulling away from Mr. Pesterfield as "the opposite of aggression. . . . It's almost submissive." (*Id.* at 22.) When asked about these comments, Mr. Olsen did not provide any detail about the methods used in reaching his conclusions beyond stating what he observed on the video and his impressions of what Mr. Pesterfield may have felt at the time. (*Id.* at 15, 22.)

The final and fairly inflammatory sentence of Mr. Olsen's report concludes that the incident was "at best an over-reaction by an officer with poor skills and at worst an abuse of authority by an official who was trying to prove his power." (*See* Olsen Decl. (#28) Ex. A at 5.) When asked about how Mr. Olsen reached that conclusion during the deposition, he simply stated that it came from the interactions viewed on the video. (*See* Warren Decl. (#24) Ex. 3 at 17.) Here again, Mr. Olsen provided no description of how he connected his observations with any specialized knowledge in order to reach his conclusions. (*See id.*)

Mr. Olsen's deposition testimony also raises questions of whether Mr. Olsen used the proper standards when analyzing if the force used on Mr. Penor was reasonable. When asked why he thought Mr. Pesterfield's conduct was unreasonable, Mr. Olsen applied an officer safety standard, not the constitutional standard that will be applied to Mr. Penor's claim. (*See id.* at 16, 19, 22) (indicating that his criticism of Mr. Pesterfield's conduct was based on the creation of an "officer's safety issue," rather than the conduct raising a "suspect . . . safety issue.")

Finally, Mr. Olsen acknowledged that he has never been involved in a situation such as

the one involving the probation staff and Mr. Penor. (*Id.* at 18.) Having never experienced a situation analogous to Mr. Penor's, I can not assume that Mr. Olsen came to his conclusions based on any experiential knowledge. Mr. Olsen's report does not provide adequate information regarding the methodology he used to come to his conclusions, and without that information, Mr. Penor has not met his burden to show that his expert's testimony is reliable.

## CONCLUSION

For the reasons given above, I GRANT defendant's Motion in Limine (#23).

IT IS SO ORDERED.

DATED this __9th__ day of March, 2010.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
United States District Court

PAGE 10 - OPINION AND ORDER